

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00302-CR

---

VICTOR MANUEL TORRES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the Criminal District Court 2
Tarrant County, Texas
Trial Court No. 1534854D, Honorable Wayne F. Salvant, Presiding

---

May 18, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Victor Manuel Torres, appeals from his conviction by jury of the offense of murder and the resulting sentence of life imprisonment. He challenges his conviction through two issues. We will affirm.[1]

---

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

***Background***

In March 2017, a passerby discovered a woman's body in an SUV. The SUV was in a small ditch, lodged up against a tree and fence line, and was still running. The doors were locked and only the driver's side window was down. The passerby called police after determining that it appeared the victim had been shot. Paramedics later determined the victim had been stabbed in the neck. The medical examiner opined the wounds were consistent with a person stabbing the victim while standing outside the SUV.

Police contacted appellant after finding he was the last person the victim called on the day of her death. Police spoke with him on two different occasions. The victim's brother testified the victim sold crack cocaine and that appellant was one of her regular buyers. The State's theory was appellant killed the victim because he wanted more drugs but was unable to pay his debt to her. Police noted no drugs were found with the victim's person or in the SUV where she was found.

Appellant admitted to police that he owed money to the victim for drugs. He told them that he met her on the morning of her death at Skip's Food Mart to pay her. The two met, he paid her, and she dropped him off at his grandmother's home. He also said the victim had a passenger with her and was still with her when she dropped him off at his grandmother's house. He said he spoke with the victim via phone a short time later regarding prospective drug buyers.

The victim's supplier testified she bought cocaine from him that morning but that she was alone. An employee of Skip's Food Mart testified that a black SUV arrived in front of the store that morning. Appellant was already in the store. He left and got into the front passenger seat of the SUV. The victim was identified as the driver. The

2

employee walked out to the SUV to return a $5.00 bill to appellant. The employee did not see anyone else in the SUV at that time. The State introduced a video recording of the store surveillance that showed the SUV arrive and appellant enter it.

Circumstantial evidence showed that appellant's home, his grandmother's home, the food mart, and the location where the SUV was found with the victim's body in it were all within blocks of one another. Further, cell phone data, Google data, and GPS data corroborated where appellant and the victim were during the relevant times. There was a short eighty-five-second period (according to GPS data) from when the SUV was near appellant's grandmother's house and to where the SUV was later found. And, appellant provided conflicting stories as to events of that morning. Appellant's sister testified on his behalf, stating she saw him when he left that day. She noted he was wearing the same pants but had changed shirts. She said he did not have any blood on him and seemed to be acting normally.

### Issue One—Admissibility of Audio Portions of Video Exhibit

Via his first issue, appellant contends the trial court erred in excluding Defense Exhibit 1, a copy of a store surveillance video containing both video and audio. He tendered that exhibit in response to the State's earlier tender of Exhibit 80. The latter happened to be the same video but only without audio. According to appellant, the audio was admissible under Texas Rule of Evidence 107. We overrule the issue.

The standard of review is one of abused discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Lessner v. State*, No. 07-19-00094-CR, 2020 Tex. App. LEXIS 4037, at *5-7 (Tex. App.—Amarillo May 21, 2020, no pet.) (mem. op., not

3

designated for publication).  We apply it here.  And, unless the trial court's ruling falls outside the zone of reasonable discretion, we must affirm it.  *Id.*

Next, Rule 107 encapsulates the rule of optional completeness and states that:

> [i]f a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject.  An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.  "Writing or recorded statement" includes a deposition.

TEX. R. EVID. 107.  It operates in response to the earlier admission of evidence deemed incomplete by a party.  Through it, one may offer the remainder of the evidence to correct, clarify, or explain the earlier, partial submission.  *Lessner*, 2020 Tex. App. LEXIS 4037, at *6; *Wilson v. State*, No. 2-04-151-CR, 2005 Tex. App. LEXIS 7663, at *6-7 (Tex. App.—Fort Worth Sep. 15, 2005, pet. ref'd) (mem. op., not designated for publication).  Yet, the omitted portions must be "on the same subject" and "necessary" to make the earlier admitted evidence fully understandable.  *Lessner*, 2020 Tex. App. LEXIS 4037, at *6.  That said, we turn to the issue at bar.

The trial court admitted State's Exhibit 80 during the testimony of the victim's brother, Charles Moten.  As mentioned earlier, it was a recording of a recording, i.e.*,* a re-recording of the original store surveillance video.  Furthermore, the victim's relatives made the re-recording as they watched the original.  When doing so, they also uttered various comments about what they saw, which utterances were recorded.  Defense Exhibit 1 was a copy of this recording.  The State apparently acquired the re-recording as well and made its own copy of it.  But in making the copy, it either muted or redacted the aforementioned utterances.  The resulting item became and was admitted as State's Exhibit 80.  Though appellant did not object to the admission of Exhibit 80, he later wanted the jury to hear

4

the redacted comments and invoked Rule 107 as a means to do so. Without the audio, Exhibit 80 was incomplete, in his view, and left jurors with false impressions. Correcting the impression allegedly necessitated the jury's hearing the omitted audio. The trial court disagreed, as do we.

As can be seen, appellant was not attempting to complete the substance of Exhibit 80 by offering Exhibit 1. Rather, he sought to add what was not there. One must remember that Exhibit 80 was, in effect, a copy of the original store surveillance video. The original store video lacked the commentary uttered by the victim's relatives. So, to accurately reflect the content of the original video, Exhibit 80 had to omit that commentary. Adding it back through the admission of Exhibit 1 was not tantamount to completing or clarifying a partial copy of the store video. It actually added more to what the store video depicted. Simply put, adding dialogue to the original video is not completing it. Rather, it is changing it. Rule 107 exists to clarify, not change, evidence.

Furthermore, the false impressions appellant sought to clarify by playing the audio were not created by Exhibit 80. They arose from testimony by one or more individuals interpretating what they saw in the video. This distinction is of import since Rule 107 permits admission of otherwise inadmissible evidence when "necessary to explain or allow the trier of fact to fully understand **the part offered by the opponent**." TEX. R. EVID. 107 (emphasis added); *accord, Walter v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007) (stating that "Rule 107 does not permit the introduction of other similar, but inadmissible, evidence unless it is necessary to explain properly admitted evidence"). The "part offered by the opponent" (i.e., the State) was a copy of the original store video which itself lacked audio. The exhibit did not create a false impression for it depicted all

5

the images captured on the store camera. So, adding the comments uttered by the victim's relatives when re-recording the original video was not necessary to address false impressions created by that video. Rather, appellant wanted to use the commentary to rebut opinions or impeach testimony uttered at trial by witnesses who saw the video. Their opinions and testimony about what they saw in the video may or may not have created false impressions, but the video did not. So, Exhibit 1 with its audio was not necessary to clarify Exhibit 80.

### *Issue Two—Requirement of Unanimous Verdict*

In his second issue, appellant asserts that the trial court incorrectly "instructed the jury that section 19.02 (b)(1) and section 19.02 (b)(2) [of the Texas Penal Code] constitute a single offense that requires only a single verdict." Allegedly, "[t]hese offenses [actually] are separate offenses." And, by not so structuring the jury charge, the trial court invited conviction by less than a unanimous verdict. Commendably, appellant also notes that the Second Court of Appeals rejected this very proposition in *Diko v. State*, 488 S.W.3d 855 (Tex. App.—Fort Worth 2016, pet. denied). Our review of the authority confirms that concession. Being bound by the precedent of the court from which the appeal came, TEX. R. APP. P. 41.3, we have no choice but to overrule the issue.

Having overruled each of appellant's two issues, we affirm the judgment of the trial court.

Brian Quinn
Chief Justice

Do not publish.

6